LYONS and wife, Appellants, v. MENOMINEE ENTERPRISES, INC., Respondent.

*No. 394. Submitted under sec. (Rule) 251.54 March 6, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 108.)

For the appellants the cause was submitted on the briefs of *Frederic C. Eberlein* and *Eberlein Law Office,* all of Shawano.

For the respondent the cause was submitted on the brief of *Mary Van Gemert* and *Preloznik & Merriam,* all of Madison.

ROBERT W. HANSEN, J. The plaintiffs moved for summary judgment. The trial court denied their motion. The sole issue on appeal is whether the trial court abused its discretion in thus denying such motion.

Summary judgment is a drastic remedy, and a motion for summary judgment is not a substitute for demurrer or judgment on the pleadings.[1] The summary judgment statute[2] vests discretion in the trial court as to whether the case should be tried.[3] The limits of such trial court discretion are not narrow.[4] Where the material facts are

---

[1] *Commercial Discount Corp. v. Milwaukee Western Bank* (1974), 61 Wis. 2d 671, 674, 675, 214 N. W. 2d 33.

[2] Sec. 270.635, Stats.

[3] *Commercial Discount Corp. v. Milwaukee Western Bank, supra,* footnote 1, at page 675.

[4] *Id.* at page 675, this court holding: ". . . The trial court will not be said to have abused its discretion in denying a motion for

in dispute or permit inconsistent inferences as to necessary ultimate facts, summary judgment should not be granted.[5] Additionally, even though no conflict of material facts exists, a trial court need not decide a question of law on a motion for summary judgment.[6] We find both an issue of fact and the existence of questions of law as here supporting the denial by the trial court of plaintiffs' motion for summary judgment.

As to the existence of an issue of fact which must be determined at trial, the trial court noted that one provision of art. XII of the articles of incorporation of defendant corporation applies to non-Menominees and another provision applies to Menominees or their heirs at law.[7] The complaint and answer do not refer to the tribal status of either plaintiff. The affidavit of the plaintiff-husband states that he is an heir at law of an enrolled tribal member, but nowhere in pleadings or affidavits does it appear

summary judgment 'unless it either incorrectly decides a legal issue or it declines to decide a legal issue which is capable of resolution in a factual vacuum.' " (Quoting *McConnell v. L. C. L. Transit Co.* (1969), 42 Wis. 2d 429, 435, 167 N. W. 2d 226.)

[5] *Id.* at page 675.

[6] *Id.* at page 675, citing *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 630, 162 N. W. 2d 626, this court there holding: ". . . A trial court need not decide a question of law on a motion for summary judgment under sec. 270.635, Stats., even though no conflict of material facts exists. There is no absolute right to summary judgment. . . ."

[7] Art. XII, Articles of Incorporation, Menominee Enterprises, Inc., provides: "Unless otherwise authorized by the affirmative vote of the holders of not less than two-thirds of the outstanding shares of stock entitled to vote thereon, the corporation shall have no authority to sell, exchange, assign, convey or otherwise transfer all or any portion of the real property owned by the corporation; provided, however . . . that the board of directors, or the appropriate officers at the direction of the board of directors, shall have authority to sell or to convey to individuals, who were enrolled tribal members . . . or their heirs-at-law, individual parcels . . . ."

whether the other plaintiff, his wife, is either tribal member or heir at law. While the plaintiffs see their tribal status as purchasers as not material, we see the trial court as clearly entitled to have the legal status of each of the purchasers determined before ruling upon the conveyance of land to them by the corporation. The board of trustees is granted authority to sell land to non-Menominees.[8] However, as to whose authorization is required for sale under the articles of incorporation, the determination of tribal or nontribal status would appear to be material. Not raised by the parties is a corollary question as to whether a sale to a husband who is a tribal member or heir at law, and a wife who is neither, is severable as regards the requirements of art. XII, with such sale intended and falling entirely within the provisions for sale to one class or the other. Whatever the consequences, if any, of tribal or nontribal status of a purchaser of land from the corporation, the trial court was entitled to have determined such status before ruling on the applicability of art. XII to the sale of land by the corporation.

As to the presence of questions of law that a trial court need not decide on a motion for summary judgment, we note one such. Plaintiffs argue that factual determinations of status are unnecessary since, whether board of trustee or board of director approval is required, the corporation cannot assert the defense of ultra vires to invalidate an executed conveyance of real property.[9] The

---

[8] *Tomow v. N. E. Isaacson & Associates, Inc.* (1973), 60 Wis. 2d 1, 25, 26, 208 N. W. 2d 824, this court holding: "The question, therefore, is whether the voting trust agreement clearly grants authority to the trustees to sell land to non-Menominees. This court concludes that it does," holding art. XII of the articles of incorporation not to be ambiguous and to have ". . . along with the voting trust formed the very heart of the Termination Act . . . ."

[9] Relying upon sec. 180.06, Stats., providing: "**Defense of ultra vires.** No act of a corporation and no conveyance or transfer of

question of law is whether there is here a corporate act classed as ultra vires,[10] or one that might be denominated intra vires.[11] If the transaction challenged is in furtherance of the legitimate business of respondent corporation, our court has held it not to be ultra vires.[12] Sec. 180.06, Stats., upon which plaintiffs rely, is identical to sec. 7 of the Model Business Corporation Act. The comment to that section of the model act makes clear the distinction between an act that is ultra vires and one that we have designated as intra vires.[13]

---

real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such or to make or receive such conveyance or transfer . . . ."

[10] *See:* 19 Am. Jur. 2d, *Corporations,* p. 441, sec. 963, defining ultra vires as follows: "An act or contract of a corporation is properly said to be ultra vires where it is beyond the powers expressly or impliedly conferred upon the corporation. . . ."

[11] *Id.* at page 441, stating: "It is also to be observed, by way of limitation of the doctrine of ultra vires, that an attempted conveyance by the officers of a corporation of its property without authority does not involve the doctrine of ultra vires, but of agents attempting to act on behalf of their principal without authority. . . ."

[12] *May Tire & Service, Inc. v. Sinclair Refining Co.* (1942), 240 Wis. 260, 262, 263, 3 N. W. 2d 347, this court holding: "It is not contended that the contract of guaranty exceeded any limitation of power imposed by the charter of respondent and the act in question, therefore, is not *ultra vires* if the transaction is in furtherance of the legitimate business of respondent company. . . ."

[13] 1 Model Business Corporation Act Annotated, sec. 7, Comment, page 279, stating: "The Model Act does not deal with intra vires corporate acts not authorized by the proper corporate authority. That problem is sometimes discussed as a phase of the ultra vires doctrine but it is not directly related to ultra vires. Ordinarily the board of directors can exercise all the powers of the corporation, but certain acts require shareholders' approval under the governing statute or the articles. The question may, therefore, arise when action is taken pursuant to a resolution of the board of directors

If the sale of land to these plaintiffs was not outside the corporate powers and the requirements of art. XII found to be procedural in character, the sale of land to the plaintiffs might be held to be an intra vires act, within the corporate power but unauthorized. The question of law would be whether sec. 180.06, Stats., reaches and controls such intra vires act. If it does not, the issue would become whether the corporate officers were clothed with actual or apparent authority to execute the contract, and, if they were not, whether plaintiffs knew of such lack of authority. It is the general rule in this state that, if a corporation permits its president for any considerable time to act as its agent, either by general authority or tacit consent, and ratifies his acts, his acts are "just as binding upon the corporation as if the power were conferred in the most formal manner." [14]

which, under the governing law or articles, requires shareholders' approval or when action is taken by corporate officers without authorization by the board of directors. In either case the result will probably depend on whether the other party to the transaction knew, or should have known, of the lack of due authorization. . . ."

[14] *St. Clair v. Rutledge* (1902), 115 Wis. 583, 591, 592, 92 N. W. 234, this court holding: "Certainly, as this court has held on many occasions, the idea that every time a person deals with the officer of a corporation or person assuming to act in its behalf, he must under all circumstances take his chances on whether such officer or person has been specially authorized in regard to the matter, has no place in the law in our day. Proof of apparent authority of a corporate officer to contract in its behalf *prima facie* establishes actual authority so to do, and mere want of authority in fact will not relieve a corporation from the burden of a contract made in reasonable reliance upon such appearance of authority. . . . [I]f a corporation permits its president, for any considerable length of time, to so act, and its board of directors customarily omits to hold meetings for the purpose of directing the affairs of the corporation, apparently leaving its business affairs wholly to be looked after by its president, and specially, or by not acting affirmatively one way or the other, ratifies his acts, his authority to do the things which, by such conduct, he is apparently authorized to do is just as bind-

If the defendant corporation were to establish in its affirmative defense that the contract here was intra vires, and not ultra vires, in character, the determination of its validity would involve: (1) Whether the corporation is estopped from denying that its president had the powers which it customarily allowed him to exercise; [15] (2) whether the corporation enjoyed the benefits of the transaction and thus ratified it; [16] (3) whether the corporate seal was placed upon a paper purporting to be a corporate act; [17] and (4) whether there is proof of the authority of the president to act for his company in the particular transaction by parol or circumstantial evidence. [18] As to the matter of apparent authority, it is not required that purchasers of land from a corporation ". . . insist on being shown the resolution of the board of directors authorizing the particular officer or agent to transact the particular business which he assumes to conduct." [19] The

ing upon the corporation as if the power were conferred in the most formal manner."

[15] *Id.* at page 590, holding: "A corporation is estopped from denying, in the particular instance, that its president had the powers which it has customarily allowed him to exercise in the face of the public."

[16] *Id.* at page 591, holding: "A corporation cannot enjoy the benefits of a transaction and repudiate its responsibilities. Such enjoyment is deemed a ratification."

[17] *Id.* at page 591, holding: "The presence of the corporate seal upon a paper purporting to be a corporate act, *prima facie* shows that the active agent of the corporation, in executing the paper, was duly authorized in the matter."

[18] *Id.* at page 591, holding: "Proof of the authority of the president to act for his company in the particular transaction may be shown by an oral vote of the board of directors not made a matter of record, or otherwise by parol, and often equally well by circumstantial evidence."

[19] *Curtis Land & Loan Co. v. Interior Land Co.* (1908), 137 Wis. 341, 351, 352, 118 N. W. 853, this court holding: ". . . A person who knows that the officer or agent of the corporation habitually transacts certain kinds of business for such corporation under

defendant's claim that sec. 180.70 (1), Stats.,[20] permits a corporation to enjoy the benefit of a transaction, not specifically authorized by its board of directors, and subsequently to impeach the validity of such transaction has been rejected by this court.[21] Questions of law, as well as issues of fact, are here present which are incapable of being decided on the basis of the pleadings and affidavits.

The summary judgment statute in this state does not confer a right to summary judgment but rather confers on the trial court a discretionary power to grant summary judgment when it believes summary disposition of a case is called for.[22] Normally, a trial on the merits is indicated where there is a real controversy.[23] Even if

circumstances which necessarily show knowledge on the part of those charged with the conduct of the corporate business assumes, as he has the right to assume, that such agent or officer is acting within the scope of his authority. . . ."

[20] Sec. 180.70 (1), Stats., providing in pertinent part: ". . . the sale . . . of less than substantially all the property and assets of a corporation, . . . may be made upon such terms and conditions and for such consideration, . . . as shall be authorized by its board of directors; and in such case no authorization or consent of the shareholders shall be required, unless otherwise provided by law or in the articles of incorporation."

[21] *Eastman v. Parkinson* (1907), 133 Wis. 375, 380, 381, 113 N. W. 649, this court holding: "It is a mistake to suppose that a mere statutory regulation of the manner of making a corporate contract such as the one in question is a prohibitory law rendering a good-faith executed transaction of the kind in disregard of it void. . . . The violation of such a statute, at the most, is construed, ordinarily, as rendering the contract voidable, but not so as to allow one party to enjoy the benefit of it and at the same time such party or some one acting in his right, in whole or in part, to impeach it, or any one interested to remain silent as to its validity to the prejudice of the innocent party and thereafter impeach its validity. . . ."

[22] *Zimmer v. Daun, supra*, footnote 6, at page 631.

[23] *Herbst v. Hansen* (1970), 46 Wis. 2d 697, 701, 702, 176 N. W. 2d 380, this court holding: " 'If the party opposing the motion for summary judgment submits sufficient facts which show there is

only questions of law were here involved, the trial court here would have been entitled to deny the motions of plaintiffs and defendant for summary judgment.[24] There was here an entirely warranted and appropriate denial by the trial court of appellants' motion for summary judgment.

*By the Court.*—Order affirmed.

a real controversy and takes the matter challenged by the motion out of the category of being a sham and unmeritorious suit or defense, that party is normally entitled to a trial on the merits.' " (Quoting *Schuster v. Germantown Mut. Ins. Co.* (1968), 40 Wis. 2d 447, 452, 162 N. W. 2d 129.)

[24] *Id.* at page 702, holding: " 'A trial court need not decide a question of law on a motion for summary judgment . . . even though no conflict of material facts exists. . . .' " (Quoting *Zimmer v. Daun, supra,* footnote 6, at page 630.)